UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAUL K. LEBIDINE,

        *Plaintiff*,

   v.

JOHN PHELAN,

        *Defendant*.

Civil Action No. 23-2460 (LLA)

## MEMORANDUM OPINION

Retired Brigadier General Paul K. Lebidine brings this action against Secretary of the Navy John Phelan. ECF No. 1.[1] He alleges that the Secretary acted arbitrarily and capriciously and contrary to law, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, by adopting the recommendation of the Board for Correction of Naval Records ("Corrections Board") that Mr. Lebidine not be considered for a promotion to Major General. ECF No. 1. Secretary Phelan and Mr. Lebidine have filed cross-motions for summary judgment. ECF Nos. 10, 12. For the reasons explained below, the court will grant Secretary Phelan's motion for summary judgment and deny Mr. Lebidine's cross-motion for summary judgment.

### I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Mr. Lebidine enlisted in the U.S. Marine Corps ("USMC") in 1984. ECF No. 1 ¶ 5. During his thirty-three-year career, he served in multiple combat deployments in the Persian Gulf,

---

[1] Although Mr. Lebidine named former Secretary of the Navy Carlos Del Toro as a defendant, Secretary Phelan is "automatically substituted as a party" pursuant to Federal Rule of Civil Procedure 25(d).

Iraq, and Afghanistan. *Id.* ¶ 5.  In September 2015, a USMC Reserve Major General Promotion Selection Board selected Mr. Lebidine for promotion to Major General.  ECF No. 17-1, at 3.[2]  He was the only officer selected for the promotion.  *Id.*

In January 2016, the USMC Office of the Inspector General informed Mr. Lebidine that it was opening an investigation into allegations that he had mistreated subordinates, plugged an unauthorized personal device into a government computer, and improperly signed certificates acknowledging that he had completed remedial computer security training when in fact his subordinate had completed the training on his behalf.  *Id.* at 3; ECF No. 17-2, at 11-12.  The following month, the Secretary of Defense approved the Promotion Selection Board's report, which included Mr. Lebidine's promotion recommendation, but he informed the Secretary of the Navy that he was delaying his recommendation that the President of the United States nominate Mr. Lebidine for the promotion until the outcome of the Inspector General's investigation.  ECF No. 17-1, at 3; ECF No. 17-2, at 23.

In April, the Inspector General sent Mr. Lebidine a preliminary report indicating that there was a basis to substantiate the allegations concerning the unauthorized personal device and the training certificates but not the allegations of mistreating subordinates.  ECF No. 17-1, at 3-4, 21-24; ECF No. 17-2, at 1-2.  Mr. Lebidine acknowledged receipt of the preliminary report and informed the Inspector General that he had nothing to add.  ECF No. 17-1, at 4; ECF No. 17-2, at 3.  In May, the Inspector General issued the final report concluding that Mr. Lebidine had connected his personal device to a government computer and improperly used official government time by having a subordinate officer complete his remedial computer security training.  ECF No. 17-1, at 4; ECF No. 17-2, at 4-5.

---

[2] The page numbers cited are those generated by CM/ECF.

In July, the USMC Assistant Commandant issued Mr. Lebidine a nonpunitive letter of caution based on the Inspector General's report. ECF No. 17-1, at 4; ECF No. 17-2, at 14. The Assistant Commandant further convened a Promotion Review Board to determine whether Mr. Lebidine remained qualified for a promotion to Major General in light of the Inspector General's findings. ECF No. 1 ¶ 35; ECF No. 17-1, at 4, 19-20. Mr. Lebidine was informed that he could submit materials for the Promotion Review Board's consideration, and he maintains that this communication was the first time he learned that he was under consideration for a promotion. ECF No. 1 ¶ 34; ECF No. 17-1, at 4.

In early September, Mr. Lebidine provided the Promotion Review Board with materials for its consideration, including an explanation for the unauthorized personal device and training certificates. ECF No. 17-1, at 4-5; ECF No. 17-2, at 6-8. Mr. Lebidine stated that he had plugged his personal phone into a government computer to charge it so that he could retrieve a phone number he needed to handle a family emergency back in the United States (he was deployed in Afghanistan at the time), and that he had signed the training certificates without reviewing what they were. ECF No. 17-1, at 4; ECF No. 17-2, at 6-7. Mr. Lebidine also submitted two letters of support from his superior officers. ECF No. 1 ¶ 36; ECF No. 17-2, at 9-10.

In mid-September, the Promotion Review Board unanimously determined that Mr. Lebidine was "not fully qualified for promotion to the grade of major general." ECF No. 17-1, at 5 (quoting ECF No. 17-2, at 15); *see* ECF No. 1 ¶ 37. While the board acknowledged that Mr. Lebidine's "overall outstanding performance reflects dedication to duty, Corps, and country," it concluded that "his lapse in judgment and compliance illuminated to the board deficiencies not indicative of a major general." ECF No. 17-1, at 5 (quoting ECF No. 17-2, at 15). The Deputy Commandant for Manpower and Reserve Affairs endorsed the Promotion Review Board's

recommendation, and the Staff Judge Advocate to the Assistant Commandant found the board's findings to be legally sufficient. ECF No. 17-1, at 5.

In December, the Secretary of the Navy asked the Secretary of Defense to recommend that the President remove Mr. Lebidine's name from the promotion selection list. *Id.*; ECF No. 17-2, at 21-22. The Secretary of the Navy explained that "[Mr.] Lebidine's demonstrated deficiencies in the qualities of good judgment and leadership" has "led to a loss of trust and confidence by the most senior leaders in the Marine Corps." ECF No. 17-2, at 21. The Chairman of the Joint Chiefs of Staff concurred with the Secretary of the Navy's recommendation. ECF No. 17-1, at 5. In January 2017, the Secretary of Defense recommended that President Donald J. Trump remove Mr. Lebidine's name from the list. *Id.*; ECF No. 17-2, at 17. In June, President Trump removed Mr. Lebidine from consideration. ECF No. 17-1, at 5.

In May 2020, Mr. Lebidine requested that the Corrections Board promote him to Major General on the grounds that it would be an error or injustice not to promote him. ECF No. 1 ¶¶ 38-40; ECF No. 17-1, at 3. In September 2021, the Corrections Board denied his request. ECF No. 1 ¶ 41; ECF No. 17-1, at 2-10. The Corrections Board first explained that it lacked the authority to promote him, because such a promotion would require Senate confirmation. ECF No. 17-1, at 7. It then concluded that Mr. Lebidine's removal from the promotion selection list had followed the proper procedures. *Id.* at 7-9. In so finding, the Corrections Board rejected Mr. Lebidine's arguments (1) that he should have been given notice when the Secretary of Defense delayed recommending to the President that he be promoted, because then he would have more vigorously defended himself during the Inspector General's investigation; (2) that the Promotion Review Board was improperly constituted; (3) that the results of the Inspector General's investigation were flawed; and (4) that denying him the promotion would be unjust in light of his

4

exemplary service record.  *Id.*  In February 2022, the Secretary of the Navy approved the Corrections Board's recommendation.  *Id.* at 10.  Mr. Lebidine learned of the Secretary's decision in November.  ECF No. 1 ¶ 47.

In August 2023, Mr. Lebidine filed suit in this court, arguing that the Secretary's decision adopting the Corrections Board's recommendation was arbitrary and capricious, contrary to law, and not supported by substantial evidence.  *See generally id.*  The parties filed cross-motions for summary judgment, which are ripe for resolution.  ECF Nos. 10 to 12, 14 to 16.

## II.     LEGAL STANDARDS

Under the APA, a court shall "set aside agency action, findings, and conclusions" if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2).  Pursuant to this standard, the court must ensure that the agency "considered the factors relevant to its decision and articulated a rational connection between the facts found and the choice made."  *In re Polar Bear Endangered Species Act Listing & Section 4(d) Rule Litig.*, 709 F.3d 1, 8 (D.C. Cir. 2013) (quoting *Keating v. Fed. Energy Regul. Comm'n*, 569 F.3d 427, 433 (D.C. Cir. 2009)).  An agency acts arbitrarily and capriciously if it "relie[s] on factors which Congress has not intended it to consider, entirely fail[s] to consider an important aspect of the problem, offer[s] an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Id.* (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 997-98 (D.C. Cir. 2008)).

In cases brought under the APA, the usual summary judgment standard under Federal Rule of Civil Procedure 56 does not apply "because of the court's limited role in reviewing the administrative record."  *Albino v. United States*, 78 F. Supp. 3d 148, 163 (D.D.C. 2015).  The court

may only review the record "that was before the [agency] at the time [it] made [its] decision." *Am. Wildlands*, 530 F.3d at 1002 (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Albino*, 78 F. Supp. 3d at 163 (quoting *Occidental Eng'g Co. v. Immigr. & Naturalization Serv.*, 753 F.2d 766, 769 (9th Cir. 1985)). "Summary judgment thus serves as the mechanism for deciding . . . whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id.*

In reviewing a determination by a military corrections board, the court accords the board great deference. *Powers v. Donley*, 844 F. Supp. 2d 65, 70 (D.D.C. 2012); *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989) (explaining that military record corrections decisions are subject to "an unusually deferential application of the 'arbitrary or capricious' standard"). The court will only step in to correct "the most egregious decisions," *Kreis*, 866 F.2d at 1515, so that it does not become "a forum for appeals by every soldier dissatisfied with [a military board's conclusion]," *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000). The key inquiry is whether "the decision making process was deficient, not whether [the] decision was correct." *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1405 (D.C. Cir. 1995) (alteration in original) (quoting *Kreis*, 866 F.2d at 1511). Accordingly, the military board's determination "need not be a model of analytic precision," but it "must minimally contain a rational connection between the facts found and the choice made." *Wilhelmus v. Geren*, 796 F. Supp. 2d 157, 163 (D.D.C. 2011) (internal quotation marks omitted) (quoting *Dickson*, 68 F.3d at 1404).

### III.    DISCUSSION

The court concludes that the Secretary's adoption of the Corrections Board's recommendation was neither arbitrary and capricious nor contrary to law, and it accordingly will grant summary judgment to the Secretary.[3]

### A.    The Secretary Was Not Required to Provide Notice Under 10 U.S.C. § 14311

Mr. Lebidine first argues that the Secretary of the Navy's adoption of the Corrections Board's recommendation is arbitrary and capricious because, under 10 U.S.C. § 14311, the Secretary of Defense was required to inform him in February 2016 that his promotion was being delayed pending the outcome of the Inspector General's investigation and provide him an opportunity to respond. ECF No. 12-1, at 19-23. Because the Secretary of Defense failed to do so, Mr. Lebidine did not mount a vigorous defense to the Inspector General's investigation. *Id.* The Secretary of the Navy responds that Mr. Lebidine is misunderstanding Section 14311, which the Secretary argues only comes into play after a candidate for promotion has been nominated by the President and confirmed by the Senate. ECF No. 10, at 13-15. Mr. Lebidine replies that the Corrections Board concluded that Section 14311 applied to him, and that the Secretary is now impermissibly offering a post-hoc rationale for the Corrections Board's decision. ECF No. 11, at 20-21; ECF No. 16, at 4-7; *see Sec. & Exch. Comm'n v. Chenery*, 332 U.S. 194, 196-97 (1947).

---

[3] Mr. Lebidine argues that this court should review the Corrections Board's recommendation under the APA's substantial-evidence standard, ECF No. 11, at 23-29; ECF No. 16, at 10-13, but absent certain exceptions not relevant here, decisions by military boards are informal adjudications not subject to substantial-evidence review. *See McKinney v. Wormuth*, 5 F.4th 42, 46 (D.C. Cir. 2021). While Mr. Lebidine contends that *McKinney* conflicts with earlier Supreme Court precedent, ECF No. 16, at 10-11 (quoting *Chappell v. Wallace*, 462 U.S. 296, 302 (1983) and *Clinton v. Goldsmith*, 526 U.S. 529, 539 (1999)), the language he points to in both cases was dicta and not essential to the Court's holding in either case.

The Secretary has the better of the argument. In order to receive a promotion to a high-level military position like Major General, the officer must be nominated by the President, confirmed by the Senate, and then formally appointed by the President. *Dysart v. United States*, 369 F.3d 1303, 1306 (Fed. Cir. 2004); *see* 10 U.S.C. § 12203. For officers like Mr. Lebidine, the process begins with the convening of a promotion selection board, 10 U.S.C. § 14101, which forwards its recommendations to the Secretary of the Navy, *id.* § 14110. The Secretary then reviews the selection board's list. *Id.* If the Secretary wishes to remove a name from the selection board's list based on information that was not available to the selection board, he must notify the officer and provide him with an opportunity to respond. *Id.* § 14111(c). If the Secretary is satisfied with the selection board's list, he transmits it through the Secretary of Defense to the President. *Id.* § 14111(a). Once the President approves the list, the officers are referred to the Senate for confirmation. *Id.* § 12203(a); *see id.* § 14308(b).[4] After the Senate votes to confirm an officer for a promotion, the officer must then be appointed to the new position, which requires that the "President . . . make a public act of appointment." *Dysart*, 369 F.3d at 1312. "The President may remove the name of any officer from a promotion list before the date on which the officer is promoted," 10 U.S.C. § 14310(a), even after Senate confirmation, *Dysart*, 369 F.3d at 1308-09. Additionally, "the appointment of an officer to a higher grade may be delayed" in certain circumstances, such as when the officer is the subject of an investigation. 10 U.S.C. § 14311(a)(1)(B). When an officer's appointment is delayed under Section 14311, the officer is entitled to notice and an opportunity to respond. *Id.* § 14311(c)(1)-(2).

---

[4] "The names of the officers recommended for promotion in the record of a selection board shall be disseminated to the armed force concerned . . . upon, or at any time after, the approval of the report by the President." 10 U.S.C. § 14112(a)(2).

As the above process demonstrates, an officer is only entitled to notification that his promotion is being delayed under Section 14311 after the President has nominated the officer and the Senate has confirmed him. And, as the Corrections Board found, Mr. Lebidine was nowhere near that stage when the Secretary of Defense decided to hold off on recommending Mr. Lebidine to the President pending the outcome of the Inspector General's investigation. ECF No. 17-1, at 7.

While Mr. Lebidine argues that "the Correction[s] Board determined that 10 U.S.C. § 14311 did apply to [him]," ECF No. 16, at 4, that assertion is clearly belied by the record. Specifically, the Corrections Board explained:

> The Board found Petitioner's contention that his due process rights were violated when his name was withheld from the promotion list and he was not provided timely notice to be without merit. Petitioner's name was never withheld from the FY 2017 USMCR Major General promotion selection list. The [Secretary] approved the FY 2017 USMCR Major General PSB report on 16 February 2016, thereby converting the report to a promotion selection list. The [Secretary] merely delayed forwarding his recommendation for Petitioner's nomination to the President pending resolution of the [Inspector General's] investigation . . . . Accordingly, Petitioner's nomination was never withheld; his name remained on the promotion selection list until such time as it was properly removed by the President, rendering moot his arguments in his first contention of error or injustice.

ECF No. 17-1, at 7. If further confirmation were needed, it comes from the Corrections Board's characterization of Mr. Lebidine's first contention of error, in which the Corrections Board explained that Mr. Lebidine was premising his argument on "paragraph (c) of reference (b)," *id.* at 6—which is 10 U.S.C. § 14311(c), ECF No. 17-1, at 2—and quotes the statute at length, ECF No. 17-1, at 6, before rejecting the argument, *id.* at 7.

Accordingly, the Secretary is not engaging in a post-hoc justification but simply relying on the Corrections Board's sound rejection of Mr. Lebidine's argument under Section 14311. And because the Corrections Board's understanding of Section 14311 accords with the law, it is not

9

arbitrary and capricious. Accordingly, the Secretary is entitled to summary judgment on Mr. Lebidine's argument that he was entitled to notice under Section 14311 (Count I).

### B. The Corrections Board's Decision Was Not Arbitrary and Capricious

Mr. Lebidine's second argument is that the Corrections Board's decision was arbitrary and capricious because the board concluded that Mr. Lebidine acted "knowingly and intentionally" in signing the training forms when the evidence in the record established that "his signing of the training certificates was a hasty mistake with no intent or knowledge to disregard remedial training." ECF No. 16, at 14.[5] The trouble with this argument is that the record does not conclusively establish that Mr. Lebidine was not aware that he had to complete the remedial computer security training. Specifically, as the Inspector General wrote in his report:

> We conclude that [Mr.] Lebidine did sign the training certificates, but did not complete the training, in violation of [military rules] . . . . [These rules] require[] violators to complete remedial training within a prescribed time period in order to regain network access. *[Mr. Lebidine] had an obligation to complete the remedial training. [Mr.] Lebidine acknowledged culpability for the violation and failure to complete the training.*

ECF No. 17-1, at 22-23 (emphasis added). As the Assistant Commandant wrote in Mr. Lebidine's nonpunitive letter of caution:

> [I]n July 2015 you plugged an unauthorized personal electronic device into a government computer in violation of command policy. *After being directed to take remedial action for that misstep, in the form of additional information systems training*, you then improperly allowed government personnel on official time to complete the training you were directed to personally complete. You then improperly signed training certificates attesting that you had completed the training that one of your subordinates had completed for you.

---

[5] As noted, *supra* note 3, substantial-evidence review does not apply to a Corrections Board decision like this one, so the court will review it under the arbitrary-and-capricious standard.

ECF No. 17-2, at 14 (emphasis added). And as the Promotion Review Board wrote in recommending that Mr. Lebidine be removed from the promotion list:

> In the board's unanimous opinion, [Mr. Lebidine] is not fully qualified for promotion to the grade of major general to meet the needs of the Marine Corps. [Mr.] Lebidine *violated existing rules and regulations and he further failed to comply with the prescribed remediation plan . . . .* While his overall outstanding performance reflects dedication to duty, Corps, and country, his lapse in judgment and compliance illuminated to the board deficiencies not indicative of a major general.

*Id.* at 15 (emphasis added).[6]

Based on the record evidence, the Corrections Board could have found that Mr. Lebidine's misconduct was intentional. Instead, it largely credited Mr. Lebidine's innocent explanation but still found that his misconduct was serious and showed a serious lapse in judgment. As the Corrections Board explained:

> [T]he Board considered Petitioner's contention that the denial of his promotion was unjust given the entirety of Petitioner's exemplary service record compared to the relatively minor nature of the allegations substantiated by the [Inspector General's] investigation. In this regard, the Board agrees that Petitioner's service record is extremely meritorious and impressive; he would not have been selected for promotion to major general if it was not. *However, the Board disagreed with Petitioner's characterization of the substantiated allegations as "minor rule violations."* While the Board might agree with such a characterization with regard to the cell phone incident, especially given the context of the family stress he was dealing with at the time, it did not agree with this characterization as it pertained to Petitioner's signing of the training certificates. *Petitioner's signing of these certificates, documenting training that he knew that he did not conduct, raises legitimate questions regarding his judgment, if not his integrity. Considered in the light most favorable to Petitioner, this act demonstrates, at the very least, a disregard for the designated remedial action for his cell phone oversight, and an inexcusable lack [of] attention to*

---

[6] Mr. Lebidine appears to take issue with the Assistant Commandant's and the Promotion Review Board's characterizations of his misconduct, ECF No. 11, at 28, but the opportunity to challenge these characterizations was before the Corrections Board, not before this court.

> *detail.  Regardless of the quality of Petitioner's service record, such lapses in judgment do call into question Petitioner's qualifications to serve as a major general.*  Accordingly, the Board found no injustice in the denial of Petitioner's promotion to major general based upon these substantiated allegations.

ECF No. 17-1, at 9 (emphases added).

In reviewing the Corrections Board, this court's task is to determine whether there is "a rational connection between the facts found and the choice made."  *Wilhelmus*, 796 F. Supp. 2d at 163 (internal quotation marks omitted) (quoting *Dickson*, 68 F.3d at 1404).  As these record excerpts demonstrate, such a connection is evident here.  The Corrections Board considered the entire record—including Mr. Lebidine's explanation for his misconduct, the Inspector General's Report, the Assistant Commandant's nonpunitive letter of caution, and the Promotion Review Board's decision—and it concluded that Mr. Lebidine's poor judgment weighed against recommending him for a promotion.  ECF No. 17-1, at 9.  Because the Corrections Board rationally considered the evidence and explained the connection between its findings and conclusion, its reasoned decision-making complies with the APA.  *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  The Secretary is therefore entitled to summary judgment on Mr. Lebidine's APA claim (Count II).

## IV.   CONCLUSION

For the foregoing reasons, the court will grant the Secretary's Motion for Summary Judgment, ECF No. 10, and deny Mr. Lebidine's Cross-Motion for Summary Judgment, ECF No. 12.  A contemporaneous order will issue.

                                                                                                                                                                                                                        LOREN L. ALIKHAN
                                                                  United States District Judge

Date:   March 28, 2025